UNITED STATES COURT OF INTERNATIONAL TRADE

|  |  |  |
|---|---|---|
| Catfish Farmers of America, *et al.*, | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Court No. 21-00380 |
| United States, | ) ) ) | |
| Defendant. | ) ) ) | |

## COMPLAINT

1.  This action is commenced pursuant to 19 U.S.C. §§ 1516a(a)(2)(A)(i)(I) and (a)(2)(B)(iii) to contest the U.S. Department of Commerce's ("Commerce") final results of the sixteenth administrative review of the antidumping duty order on certain frozen fish fillets from the Socialist Republic of Vietnam ("Vietnam"), published in the *Federal Register* as *Certain Frozen Fish Fillets from the Socialist Republic of Vietnam*, 86 Fed. Reg. 36,102 (Dep't of Commerce Jul. 8, 2021) (fin. results) (hereinafter, "*Final Results*"), and accompanying Issues and Decision Memorandum (hereinafter, "IDM").

## JURISDICTION

2.  This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1581(c) and 19 U.S.C. §§ 1516a(a)(2)(A)(i)(I) and (a)(2)(B)(iii).

## STANDING

3.  Plaintiffs, Catfish Farmers of America and individual U.S. catfish processors America's Catch, Inc., Alabama Catfish, LLC d/b/a Harvest Select Catfish, Inc., Consolidated Catfish Companies, LLC d/b/a Country Select Catfish, Delta Pride Catfish, Inc., Guidry's

1

Catfish, Inc., Heartland Catfish Company, Magnolia Processing, Inc. d/b/a Pride of the Pond, and Simmons Farm Raised Catfish, Inc. (collectively, "Catfish Farmers of America, *et al.*" or "Plaintiffs") are domestic producers and/or processors of frozen fish fillets (and, in the case of Catfish Farmers of America, a trade association, a majority of whose members manufacture or process the domestic like product), and thus, are interested parties as defined in 19 U.S.C. §§ 1677(9)(C) and (G).  The Catfish Farmers of America actively participated in the administrative proceeding that resulted in the contested determination, and thus, are entitled to commence this action pursuant to 19 U.S.C. § 1516a(d) and 28 U.S.C. § 2631(c).

## TIMELINESS

4. Commerce published its notice of the final results of the administrative review in the *Federal Register* on July 8, 2021.  *See Final Results*.  On August 5, 2021, Plaintiffs commenced this action by the timely filing of a summons with this Court within the thirty-day statutory time limit specified in 19 U.S.C. § 1516a(a)(2)(A).

5. This complaint is being filed within the statutory time limits specified in 19 U.S.C. § 1516a(a)(2)(A)(i)(I) and in accordance with 28 U.S.C. § 2636(c).

## SUMMARY OF FACTS

6. On October 7, 2019, Commerce initiated an administrative review of the antidumping duty order on certain frozen fish fillets from Vietnam.  *See Initiation of Antidumping and Countervailing Duty Administrative Reviews*, 84 Fed. Reg. 53,411, 53,415-16 (Dep't of Commerce Oct. 7, 2019) (notice of initiation).  Following the withdrawal of review requests for several companies, Commerce selected Seafood Joint Stock Company No. 4 Branch Dongtam Fisheries Processing Company ("DOTASEAFOOD") and Vinh Hoan Corporation ("Vinh Hoan") as mandatory respondents.

7. On December 28, 2020, Commerce published its preliminary results of the administrative review. *See Certain Frozen Fish Fillets from the Socialist Republic of Vietnam*, 85 Fed. Reg. 84,300 (Dep't of Commerce Dec. 28, 2020) (prelim. results) (hereinafter, "*Preliminary Results*"), and accompanying Preliminary Decision Memorandum. Commerce selected India and relied primarily on Indian surrogate value data despite that Indonesia produces identical and comparable merchandise that more closely represents the subject merchandise than does India, Indonesia produces and exports far greater quantities than India, and the Indonesian data on the record are superior to the Indian data. *See* Preliminary Decision Memorandum at 12-15. Additionally, Commerce relied upon data reported by separate rate respondent, Nam Viet Corporation ("Navico") despite record evidence indicating those data were unreliable. *See id*. at 10-11. Commerce also did not rely upon adverse facts available for DOTASEAFOOD despite DOTASEAFOOD's failure to cooperate to the best of its ability. *See Preliminary Results* at 84,301, n.12. Finally, Commerce incorrectly found that Colorado Boxed Beef Company ("CBBC") and QMC Foods, Inc. ("QMC") have standing as domestic wholesalers to request administrative reviews of Vietnamese suppliers that compete with their suppliers. *See* Preliminary Decision Memorandum at 4.

8. On June 25, 2021, Commerce issued the *Final Results*, in which it, *inter alia*, affirmed its selection of India as the primary surrogate country and continued to rely upon Navico's unreliable data. *See* IDM at Comment 3. However, in a change from the *Preliminary Results*, instead of relying upon the rates determined for all mandatory respondents to determine the separate rate assigned to Navico, Commerce only applied the rate determined for one mandatory respondent. Commerce also continued to not apply adverse facts available to

DOTASEAFOOD, and continued to accept CBBC and QMC's standing as domestic wholesalers.  *See Final Results* at 36,103, and accompanying IDM at Comments 1 and 5.

9. On July 2, 2021, Plaintiffs timely alleged that Commerce committed a ministerial error when it assigned Navico the zero margin calculated for only one mandatory respondent without considering the rate assigned to all mandatory respondents.

10. On July 22, 2021, Commerce determined that it correctly assigned Navico a rate based upon only one mandatory respondent and made no changes to the *Final Results*.

## COUNT 1

11. Paragraphs 1-10 are hereby incorporated by reference.

12. Commerce's selection of India as the primary surrogate country is not supported by substantial evidence, is inconsistent with prior agency practice, and is otherwise contrary to law.  In six prior administrative and new shipper reviews of this proceeding, Commerce determined correctly that Indonesia was the appropriate primary surrogate country.  Substantial record evidence in this segment of the proceeding continues to justify a finding that Indonesia is more suitable than India as the primary surrogate country.  Because Commerce did not select the appropriate primary surrogate country, and for other reasons that can be found in the public and confidential administrative records to be filed with the Court, Commerce's *Final Results* are not supported by substantial evidence and are not in accordance with law.

## COUNT 2

13. Paragraphs 1-12 are hereby incorporated by reference.

14. Even if Commerce were correct in selecting India as the primary surrogate country, its reliance on Indian surrogate values for certain FOPs is not supported by substantial evidence and is not in accordance with law because the Indonesian values are superior, and the

Indian values are distortive.  For example, the Indian values for fingerlings, whole live fish, fish feed, labor, and by-products each are not suitable surrogates, while their Indonesian counterparts satisfy Commerce's surrogate value criteria.  For these and other reasons that can be found in the public and confidential administrative records to be filed with the Court, Commerce's rejection of the individual Indonesian values in favor of the individual Indian values is not supported by substantial evidence and is not in accordance with law.

## COUNT 3

15.     Paragraphs 1-14 are hereby incorporated by reference.

16.     Commerce's refusal to apply adverse facts available to DOTASEAFOOD is not supported by substantial evidence, is inconsistent with prior agency practice, and is otherwise contrary to law.  Substantial record evidence in this administrative review demonstrates that DOTASEAFOOD failed to report necessary information which was in its possession, and this failure to cooperate to the best of its ability, warranted application of an adverse facts available rate to induce future cooperation.  Yet, Commerce did not apply adverse facts available and continued to assign DOTASEAFOOD a rate lower than that of other respondents who had been found to be non-cooperative in prior segments of the proceeding.

## COUNT 4

17.     Paragraphs 1-16 are hereby incorporated by reference.

18.     Commerce's determination to grant Navico a separate rate is not supported by substantial evidence and is not in accordance with law because Navico's separate rate application and supplemental response contained false information.  For this and other reasons that can be found in the public and confidential administrative record to be filed with the Court, Commerce should have found Navico ineligible for a separate rate in the *Final Results*.

COUNT 5

19. Paragraphs 1-18 are hereby incorporated by reference.

20. Even if Commerce's refusal to reject Navico's separate rate application were lawful, its determination not to consider the rate assigned to DOTASEAFOOD in determining the rate to assign Navico is not supported by substantial evidence and is not in accordance with law.

COUNT 6

21. Paragraphs 1-20 are hereby incorporated by reference.

22. Commerce's determination that CBBC and QMC have standing to request reviews of Vietnamese suppliers that compete with their suppliers is not supported by substantial evidence and is not in accordance with law because CBBC and QMC's commercial interests lie in the importation of subject merchandise. For this and other reasons that can be found in the public and confidential administrative records to be filed with the Court, Commerce should have found that CBBC and QMC lack standing to request administrative reviews of Vietnamese suppliers that compete with its suppliers in the *Final Results*.

**DEMAND FOR JUDGMENT AND RELIEF**

23. WHEREFORE, Plaintiffs respectfully request that this Court enter judgment in their favor and against Defendant, declare that Commerce erred in the *Final Results* as alleged herein, remand this matter to Commerce to reconsider its surrogate country and surrogate value selections, reconsider its refusal to apply adverse facts available to DOTASEAFOOD, to reconsider its acceptance of Navico's unreliable information or alternatively to consider the rate assigned to DOTASEAFOOD in determining the rate to assign to Navico, to reconsider its finding that CBBC and QMC have standing to request administrative reviews of Vietnamese

suppliers that compete with its suppliers, and grant Plaintiffs such further relief as the Court may deem appropriate.

|  |  |
|---|---|
|  | Respectfully submitted, |
| Date:  August 30, 2021 | /s/ Jonathan M. Zielinski |

Jonathan M. Zielinski
James R. Cannon, Jr.
Nicole Brunda
**CASSIDY LEVY KENT (USA) LLP**
900 19th Street NW, Suite 400
Washington, DC 20006
202-787-5507
jzielinski@cassidylevy.com

*Counsel to the Catfish Farmers of America, et al*.