# IN THE UNITED STATES
# COURT OF INTERNATIONAL TRADE

CATFISH FARMERS OF AMERICA, *et al.,*

        *Plaintiffs,*

    v.

UNITED STATES,

        *Defendant,*

QMC FOODS, INC.,

        *Defendant-Intervenor,*

COLORADO BOXED BEEF COMPANY,

        *Defendant-Intervenor.*

Court No. 21-00380

Before: The Hon. M. Miller Baker

## DEFENDANT-INTERVENORS' OPPOSITION TO PLAINTIFF'S RULE 56.2 MOTION FOR JUDGMENT ON THE AGENCY RECORD

Matthew McConkey
MAYER BROWN LLP
1999 K Street, N.W.
Washington, D.C. 20006
(202) 263-3235
*Counsel to Vinh Hoan Corporation and Nam Viet Corporation*

Dated: May 6, 2022

## <u>TABLE OF CONTENTS</u>

I.    INTRODUCTION ................................................................. 2

II.   BACKGROUND ................................................................. 3

III.  STANDARD OF REVIEW ....................................................... 5

    A.    Surrogate Country Selection ................................................. 7

    B.    Separate Rates .................................................................. 9

IV.   COMMERCE'S SELECTION OF INDIA AS SURROGATE
    COUNTRY IS SUPPORTED BY SUBSTANTIAL EVIDENCE ... 10

V.    COMMERCE'S DECISION TO GRANT NAVICO A SEPARATE
    RATE IS SUPPORTED BY SUBSTANTIAL EVIDENCE ............ 13

VI.   CONCLUSION ................................................................. 14

747663181.1

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*AMS Assocs. v. United States,*
719 F.3d 1376 (Fed. Cir. 2013) ...................................................... 9, 10

*Chevron, U.S.A., Inc. v. Natural Resource Defense Council, Inc.,*
467 U.S. 837 (1984) ..................................................................... 6

*Consol. Edison Co. v. N.L.R.B.,*
305 U.S. 197 (1938) ..................................................................... 6

*Fujitsu Gen. Ltd. v. United States,*
88 F.3d 1034 (Fed. Cir. 1996) ............................................................ 5

*Hebei Metals & Minerals Imp. & Exp. Corp. v. United States,*
28 C.I.T. 1185 (2004) ..................................................................... 9

*Nippon Steel Corp. v. United States,*
458 F.3d 1345 (Fed. Cir. 2006) ............................................................ 6

*PAM, S.p.A. v. United States,*
582 F.3d 1336 (Fed. Cir. 2009) ............................................................ 6

*Qingdao Sea-Line Trading Co. v. United States,*
766 F.3d 1378 (Fed. Cir. 2014) ............................................................ 9

*Sigma Corp. v. United States,*
117 F.3d 1401 (Fed. Cir. 1997) ............................................................ 9

*Torrington Co. v. United States,*
82 F.3d 1039 (Fed. Cir. 1996) ............................................................ 7

*Universal Camera Corp. v. NLRB,*
340 U.S. 474 (1951) ..................................................................... 6

*Zenith Radio Corp. v. United States,*
437 U.S. 443 (1978) ..................................................................... 6

ii

*Zhejiang DunAn Hetian Metal Co., Ltd. v. United States*,
   652 F.3d 1333 (Fed. Cir. 2011) ............................................................. 9

**Statutes**

19 U.S.C. § 1516a(b)(1)(B) ...................................................................... 5

19 U.S.C § 1673.......................................................................................... 7

19 U.S.C. § 1673d(c)(5)(B) ...................................................................... 3

19 U.S.C. § 1677b(c)(1) ........................................................................... 7

19 U.S.C. § 1677b(c)(1)(B) ...................................................................... 8

**Other Authorities**

19 C.F.R. § 351.102(b)(3) ........................................................................ 13

*Certain Frozen Fish Fillets from the Socialist Republic of
   Vietnam*, 85 Fed. Reg. 84,300 (Dep't of Commerce Dec. 28,
   2020) ....................................................................................................... 4

*Certain Frozen Fish Fillets From the Socialist Republic of
   Vietnam*, 86 Fed. Reg. 36,102 (Dep't of Commerce July 8,
   2021) (P.R. 552) .................................................................................... 4

CFA Brief, ECF No. 33 ............................................................................ 2

*Diamond Sawblades from China*, 71 Fed. Reg. 29,303,
   29,307 (Dep't of Commerce May 22, 2006) ....................................... 10

Import Administration Policy Bulletin 04.1: Non–Market
   Economy Surrogate Country Selection Process at 2-3
   (Mar. 1, 2004), available at
   https://enforcement.trade.gov/policy/bull04-1.html.......................... 8

*Initiation of Antidumping and Countervailing Duty
   Administrative Review*, 84 Fed. Reg. 53,411 (Dep't of
   Commerce Oct. 7, 2019) (P.R. 28)....................................................... 3

747663181.1

Issues and Decision Memorandum (Dep't of Commerce June
25, 2021) (P.R. 540) ..................................................................*passim*

NAVICO Supplemental SRA Questionaire Response
(NAVICO Supp. SRA Response) (P.R. 418; C.R. 477) ......................... 5

Policy Bulletin No. 05.1 at 1, available at
http://enforcement.trade.gov/policy/bull05-1.pdf ................................ 10

Preliminary Decision Memorandum (P.R. 493) ........................ 4, 5, 11, 13

*Pure Magnesium from the People's Republic of China*, 75
Fed. Reg. 80,791 (Dep't of Commerce Dec. 23, 2010) ........................... 8

747663181.1

**IN THE UNITED STATES
COURT OF INTERNATIONAL TRADE**

CATFISH FARMERS OF AMERICA, *et al.*,

*Plaintiffs,*

v.

UNITED STATES,

*Defendant,*

QMC FOODS, INC.,

*Defendant-Intervenor,*

COLORADO BOXED BEEF COMPANY,

*Defendant-Intervenor.*

Court No. 21-00380

Before: The Hon. M.
Miller Baker

## DEFENDANT-INTERVENORS' OPPOSITION TO PLAINTIFF'S RULE 56.2 MOTION FOR JUDGMENT ON THE AGENCY RECORD

Defendant-Intervenors, Vinh Hoan Corporation and Nam Viet

Corporation, respectfully submit this response in support of the

defendant's brief and in opposition to the Rule 56.2 motion for judgment

on the agency record filed by the plaintiffs, Catfish Farmers of America,

America's Catch, Inc., Alabama Catfish, LLC d/b/a Harvest Select

Catfish, Inc., Consolidated Catfish Companies, LLC d/b/a Country

Select Catfish, Delta Pride Catfish, Inc., Guidry's Catfish, Inc.,

Heartland Catfish Company, Magnolia Processing, Inc. d/b/a Pride of

the Pond, and Simmons Farm Raised Catfish, Inc. (collectively, "CFA"),

CFA Brief, ECF No. 33, challenging certain aspects of the United States

Department of Commerce's ("Commerce" or "the Department") final

results in the administrative review of the antidumping duty order

covering certain frozen fish fillets from the Socialist Republic of

Vietnam ("Vietnam"). For the reasons explained below, the Court should

sustain the final results because they are supported by substantial

evidence and are otherwise in accordance with law.

I.      INTRODUCTION

The Department's selection of India as the primary surrogate

value country and its determination to assign Nam Viet Corporation

("NAVICO") a separate rate is supported by substantial evidence and

otherwise in accordance with law. On the first point, the Plaintiffs

ignore the evidence already on the record that demonstrates that data

from India is in compliance with the requirements imposed on the

Department for selecting a surrogate value country, namely that India:

1) is at a comparable level of economic development as Vietnam; 2)

produces a significant amount of comparable merchandise; and 3) has

reliable data. On the second point, the Department reasonably

determined that NAVICO provided adequate responses to the requests for information regarding its previous affiliation with another company, and the record does not reasonably support a finding that NAVICO was affiliated with that company during the period of review. As such, the Department's decision to assign NAVICO a separate rate based on Vinh Hoan's calculated dumping margin under 19 U.S.C. § 1673d(c)(5)(B) is supported by substantial evidence and otherwise in accordance with law, as the government demonstrated in its brief already on file with the court.

## II.    BACKGROUND

On October 7, 2019, Commerce initiated the sixteenth administrative review of the antidumping order covering certain frozen fish filets from Vietnam. *See Initiation of Antidumping and Countervailing Duty Administrative Review*, 84 Fed. Reg. 53,411 (Dep't of Commerce Oct. 7, 2019) (P.R. 28).

Because Vietnam is a non-market economy, as part of the administrative review, the Department must determine the "normal value" for the subject merchandise based on surrogate values from economically comparable market economies that are significant producers of comparable

747663181.1

merchandise, here, frozen fish filets. After a robust exchange of comments related to the selection of a surrogate value country from April through November 2020, the Department preliminarily selected India as the primary surrogate country, because (1) it was at the same level of economic development as Vietnam; (2) it was a significant producer of merchandise comparable to the subject merchandise such that could be determined from the information available; and (3) it provided the best usable data and information with which to value Vinh Hoan's factors of production, since Vinh Hoan had already been selected as a mandatory respondent in the review. *See Certain Frozen Fish Fillets from the Socialist Republic of Vietnam*, 85 Fed. Reg. 84,300 (Dep't of Commerce Dec. 28, 2020) (preliminary results), and accompanying Preliminary Decision Memorandum ("PDM") at 12-15 (P.R. 493). On June 25, 2021, the Department published its final results and upheld the selection of India as a surrogate value country for the same reasons listed in the preliminary decision memorandum. *See Certain Frozen Fish Fillets From the Socialist Republic of Vietnam*, 86 Fed. Reg. 36,102 (Dep't of Commerce July 8, 2021) (final results) (P.R. 552), and accompanying

Issues and Decision Memorandum (Dep't of Commerce June 25, 2021) ("IDM") at 14-33 (P.R. 540).

In administrative reviews involving non-market economies like Vietnam, a country-wide rate is applied to all respondents except those that can demonstrate independence from the government through separately issued questionnaires. During the preliminary phase, NAVICO submitted a separate rate application, and timely responded to supplemental requests from the Department related to its separate rate application. *See* NAVICO Supplemental SRA Questionnaire Response (NAVICO Supp. SRA Response) (P.R. 418; C.R. 477). When publishing its preliminary results in December 2020, the Department determined that both Vinh Hoan, one of the mandatory respondents, and NAVICO, had demonstrated their eligibility for a separate rate. PDM at 10-11. Commerce upheld this decision in its final results. IDM at 4.

III.   STANDARD OF REVIEW

When reviewing Commerce's antidumping or countervailing duty determinations, the Court must uphold the decision "unless it is 'unsupported by substantial evidence on the record, or otherwise not in

accordance with law.'" *Fujitsu Gen. Ltd. v. United States*, 88 F.3d 1034, 1038 (Fed. Cir. 1996) (quoting 19 U.S.C. § 1516a(b)(1)(B)). Plaintiffs challenging a determination under the substantial evidence standard face a high barrier to reversal, because "{s}ubstantial evidence" is defined as "more than a mere scintilla" or "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *PAM, S.p.A. v. United States*, 582 F.3d 1336, 1339 (Fed. Cir. 2009) (quoting *Consol. Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)). The court "assesses whether the agency action is reasonable given the record as a whole." *Nippon Steel Corp. v. United States*, 458 F.3d 1345, 1350-51 (Fed. Cir. 2006); *see also Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951).

In reviewing whether Commerce's actions are in accordance with the law, the Court uses the two-step test articulated in *Chevron, U.S.A., Inc. v. Natural Resource Defense Council, Inc.*, 467 U.S. 837 (1984). In the first step, the Court determines "whether Congress has directly spoken to the precise question at issue" and clearly expressed its purpose in the governing statute. *Id.* at 842-43. If the statute has not directly spoken to the issue, then the Court must assess whether

747663181.1

Commerce's interpretation achieves a "sufficiently reasonable" interpretation of the statute. *Zenith Radio Corp. v. United States*, 437 U.S. 443, 450-51 (1978) (citations omitted). When determining if an interpretation is sufficiently reasonable, "{a}ny reasonable construction of the statute is a permissible construction." *Torrington Co. v. United States*, 82 F.3d 1039, 1044 (Fed. Cir. 1996).

    A.    <u>Surrogate Country Selection</u>

Antidumping duties represent the amount the "normal value" of the subject merchandise exceeds its "export price." 19 U.S.C § 1673. In an administrative review involving a non-market economy, Commerce determines "normal value" based on surrogate values for the factors of production utilized in producing the merchandise from a comparable surrogate country. 19 U.S.C. § 1677b(c)(1).

When selecting a surrogate value country, the Department must identify an "appropriate" market economy country, or one "at a level of economic development comparable to that of the nonmarket economy country" that also is a "significant producer{} of comparable merchandise." § 1677b(c)(1), (c)(4)(A)-(B). Commerce does this through compiling a list of countries at a similar level of economic development to

the one under review; determining which among them produces comparable merchandise; determining which among them produces significant amounts of comparable merchandise; and evaluating the reliability of data from those countries. Import Administration Policy Bulletin 04.1: Non–Market Economy Surrogate Country Selection Process at 2-3 (Mar. 1, 2004), available at https://enforcement.trade.gov/policy/bull04-1.html ("Policy Bulletin 04.1"). It is Commerce's longstanding practice to use Gross National Income ("GNI") data for identifying countries at a similar level of economic development. *See, e.g.*, *Pure Magnesium from the People's Republic of China*, 75 Fed. Reg. 80,791 (Dep't of Commerce Dec. 23, 2010) (final admin. review), and accompanying IDM at Cmt. 4. If multiple countries included on the list are at comparable levels of economic development and significant producers of subject merchandise, Commerce must compare data; it is not obligated to do so with countries not included on the list. IDM at 17.

When determining the factors of production used in calculating the "normal value,"  Commerce uses the "best available information." 19 U.S.C. § 1677b(c)(1)(B). Commerce has considerable discretion in

determining the "best available information," since the term is not

defined in the statute and does not mandate the use of a particular data

source. *Qingdao Sea-Line Trading Co. v. United States*, 766 F.3d 1378,

1386 (Fed. Cir. 2014).

Commerce's surrogate value determination is supported by

substantial evidence if the selected data has "a rational and reasonable

relationship to the factor of production it represents." *Hebei Metals &*

*Minerals Imp. & Exp. Corp. v. United States*, 28 C.I.T. 1185, 1191

(2004). Reviewing courts do not determine whether the data used is the

best available, "but rather whether a reasonable mind could conclude

that Commerce chose the best available information." *Zhejiang DunAn*

*Hetian Metal Co., Ltd. v. United States*, 652 F.3d 1333, 1341 (Fed. Cir.

2011).

B.     Separate Rates

In antidumping reviews involving a non-market economy,

Commerce presumes that all companies within a non-market economy

are subject to government control, including over their export activities,

and therefore should be assessed with a single antidumping duty rate.

*AMS Assocs. v. United States*, 719 F.3d 1376, 1379 (Fed. Cir. 2013) (citing

9

*Sigma Corp. v. United States*, 117 F.3d 1401, 1405 (Fed. Cir. 1997)). To avoid inclusion in the country-wide rate, a respondent must affirmatively demonstrate an absence of *de jure* and *de facto* government control. *AMS Assocs.*, 719 F.3d at 1379.

In determining an absence or presence of *de jure* control, Commerce considers the absence or presence of restrictive stipulations on the business and export licenses; legislation decentralizing control of a company; and any other formal measure that would decentralize control of the company. *Diamond Sawblades from China*, 71 Fed. Reg. 29,303, 29,307 (Dep't of Commerce May 22, 2006) (final admin. determ.). In determining a presence or lack of *de facto* control, Commerce looks at the company's ability to set its own prices, negotiate its own contracts, keep the proceeds of its sales (exclusive of taxes), and select management autonomously. *AMS Assocs.*, 719 F.3d at 1379; Policy Bulletin No. 05.1 at 1, available at

http://enforcement.trade.gov/policy/bull05-1.pdf.

IV.   COMMERCE'S SELECTION OF INDIA AS THE PRIMARY
      SURROGATE COUNTRY IS SUPPORTED BY SUBSTANTIAL
      EVIDENCE

A review of the substantial record evidence, which the government does in great detail in its brief, demonstrates that India reasonably meets Commerce's criteria for selection as a surrogate country, because it is at a level of economic development similar to Vietnam and is a significant producer of frozen fish filets. In addition, the selected data from India is also the best available data on the record to support its surrogate value calculation.

The Department, in keeping with historical practice, used GNI data from 2018 to develop a list of potential surrogate countries at comparable levels of income to Vietnam, which, for this review, included Angola, Bolivia, Egypt, Honduras, Nicaragua, and India. *See* PDM at 12-13; IDM at 16-18. This demonstrates that, using the Department's historical practice, India has a similar level of economic development to Vietnam, and, notably, Indonesia is not at the same level of economic development as Vietnam. In addition, evidence on the record indicates that India "exported 950,000 {kilograms} of frozen fish filets;" though the surrogate value scope included frozen filets other than the *pangasius* filets directly at issue, some of those 950,000 kilograms of exports were directly in scope *pangasius* filets. IDM at 20; Vinh Hoan

11

Surrogate Values (P.R. 263-264). Looking at the values of various inputs selected, Commerce relied on known industry publications, *Fishing Chimes* and *Undercurrent News*, and looked at data from the region where frozen fish filets are predominantly sourced. IDM at 28. In addition, Commerce used financial statements that overlapped for eight of the twelve months of the administrative review. IDM at 30.

Because substantial evidence on the record indicates that India is both economically similar to Vietnam, a significant producer of comparable merchandise, and a source of reliable data, Vinh Hoan agrees with the conclusion reached in the defendant's brief that Commerce did not err in selecting India as a surrogate value country for the current administrative review. Given that India meets all the criteria necessary for selection, and Indonesia is not economically comparable to Vietnam due to its exclusion from Commerce's list and relatively higher GNI level, IDM at 17, there was no need for the agency to compare data from both countries. Therefore, based on this record, a reasonable mind could conclude that Commerce chose the best available information when selecting India as the surrogate value country in this administrative review, meeting the necessary standard of review.

12

V.   COMMERCE'S DECISION TO GRANT NAVICO A SEPARATE
     RATE IS SUPPORTED BY SUBSTANTIAL EVIDENCE

As explained above, NAVICO could only be eligible for a separate

rate if it fully cooperated in the review (which includes providing

accurate data to Commerce), and proactively provided information to

Commerce to demonstrate that it is not under *de jure* or *de facto* control

of the Vietnamese government. NAVICO timely provided a Separate

Rate Application ("SRA") and timely answered all requests Commerce

provided in a supplemental SRA. PDM at 10-11. Commerce evaluated

the information NAVICO provided and determined that the Vietnamese

government did not exercise control over NAVICO, either *de jure* or *de*

*facto*. IDM at 41-42.

Despite this contemporaneous data provided in response to

Commerce's demands, plaintiffs argue that Commerce ignored historical

information showing that NAVICO had failed to disclose certain

affiliations, and therefore was not eligible for a separate rate. However,

based on record evidence, Commerce was not persuaded that the

information provided by the plaintiffs was relevant to the period of

review; as such, the government's assessment that such a finding is

reasonable. IDM at 42. "{Commerce} will not find that control exists on

the basis of these factors unless the relationship has the potential to impact decision concerning the production, pricing, or cost of the subject merchandise or foreign like product," and the "temporal aspect of a relationship in determining whether control exists; normally, temporary circumstances will not suffice as evidence of control." 19 C.F.R. § 351.102(b)(3). Therefore, the lack of contemporaneous data demonstrating a control relationship between NAVICO and the alleged affiliated company during the period of review shows that Commerce did not err when it found that NAVICO was cooperative in the review, had not failed to disclose an affiliation, and thus is eligible to receive a separate rate.

## VI.   CONCLUSION

For the foregoing reasons, the defendant-intervenors align their comments with those submitted by the defendant, the United States. There is substantial evidence on the record to support the Department's decision to select India as the surrogate value country, and to determine that NAVICO is indeed independent from its alleged affiliated party and therefore eligible to receive a separate rate. Therefore, the Court

747663181.1

should sustain the final results, as they are supported by substantial

evidence and otherwise in accordance with law.

> Respectfully Submitted,
>
> /s/ Matthew J. McConkey
>
> Matthew McConkey
> MAYER BROWN LLP
> 1999 K Street, N.W.
> Washington, D.C. 20006
> (202) 263-3235
> *Counsel to Vinh Hoan Corporation
> and Nam Viet Corporation*

Dated: May 6, 2022

15

<u>Certificate of Compliance with Chambers Procedures 2(B)(1)</u>

The undersigned hereby certifies that the foregoing brief contains 2,538 words, exclusive of the corporate disclosure statement, table of contents, table of authorities, glossary of case-specific acronyms and abbreviations, and certificates of counsel, and therefore complies with the maximum 7,000 word count limitation as set forth in the Standard Chambers Procedures of the U.S. Court of International Trade.

By: <u>/s/Matthew J. McConkey</u>
Matthew J. McConkey