# UNITED STATES COURT OF INTERNATIONAL TRADE

CATFISH FARMERS OF AMERICA, *et al.*,

                *Plaintiffs*,

       v.

UNITED STATES,

                *Defendant*,

and

QMC FOODS, INC.; COLORADO BOXED BEEF COMPANY; VINH HOAN CORPORATION; AND NAM VIET CORPORATION,

             *Defendant-Intervenors*.

Court No. 21-00380

Before: The Hon. M. Miller Baker

## DEFENDANT-INTERVENORS' COMMENTS IN SUPPORT OF U.S. DEPARTMENT OF COMMERCE FINAL RESULTS OF REDETERMINATION

Matthew McConkey
MAYER BROWN LLP
1999 K Street, N.W.
Washington, D.C. 20006
(202) 263-3235
*Counsel to Vinh Hoan Corporation and Nam Viet Corporation*

Dated: March 4, 2024

## TABLE OF CONTENTS

**BACKGROUND** ...................................................................... 2

**ARGUMENT** ............................................................................ 3

    I.    Commerce's Surrogate Country Selection Process Complies
    with the Remand Order and Section 1677b(c)(4) In Again
    Finding That Indonesia Is Not at a Comparable Level of
    Economic Development with Vietnam ................................... 4

    II.   While Not Required Under Law or Practice, Commerce Also
    Reasonably Concluded That Record Indian Data Better
    Meets Its Surrogate Value Criteria Than Does Record
    Indonesian Data ...................................................................... 9

**CONCLUSION** ....................................................................... 11

# TABLE OF AUTHORITIES

## CASES

*Boading Yude Chem. Indus. Co., Ltd. v. United States,*
  170 F. Supp. 2d 1335, 1343 (Ct. Int'l Trade 2001) ............................... 6

*Catfish Farmers of America v. United States,*
  Court No. 21-00380, Slip Op. 23-97, 2023 WL 4560815 (Ct. Int'l Trade
  July 7, 2023) ............................................................................................ 1

*Jacobi Carbons AB v. United States,*
  313 F. Supp. 3d 1308, 1316, 1320 (Ct. Int'l Trade 2018) ..................... 6

*Jiaxing Brothers Fastener Co., Ltd. v. United States,*
  822 F.3d 1289, 1293 (Fed. Cir. 2016) .................................................... 6

*Juancheng Kangtai Chem. Co. v. United States,*
  2015 WL 4999476 (Ct. Int'l Trade 2015) .............................................. 6

*Nippon Steel Corp. v. United States,*
  337 F.3d 1373, 1379 (Fed. Cir. 2003) .................................................. 11

*QVD Food Co. v. United States,*
  658 F.3d 1318, 1323 (Fed. Cir. 2011) .................................................... 6

*Save Domestic Oil, Inc. v. United States,*
  357 F.3d 1278, 1283-84 (Fed. Cir. 2004) .............................................. 6

*United Steel & Fasteners, Inc. v. United States,*
  947 F.3d 794, 798 (Fed. Cir. 2020) ...................................................... 11

## STATUTES

18 C.F.R. 351.408(c)(2) ............................................................................. 10

19 U.S.C. § 1677b(c)(4) ................................................................... 3, 4, 8, 11

## OTHER AUTHORITIES

*Certain Frozen Fish Fillets from the Socialist Republic of Vietnam*,
86 Fed. Reg. 36,102 (Dep't of Commerce July 8, 2021) ......................... 2

## UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| CATFISH FARMERS OF AMERICA, *et al.*, | |
| *Plaintiffs*, | |
| v. | Court No. 21-00380 |
| UNITED STATES, | Before: The Hon. M. Miller Baker |
| *Defendant*, | |
| and | |
| QMC FOODS, INC.; COLORADO BOXED BEEF COMPANY; VINH HOAN CORPORATION; AND NAM VIET CORPORATION, | |
| *Defendant-Intervenors*. | |

## DEFENDANT-INTERVENORS' COMMENTS IN SUPPORT OF U.S. DEPARTMENT OF COMMERCE FINAL RESULTS OF REDETERMINATION

Defendant-Intervenors, Vinh Hoan Corporation and Nam Viet Corporation, respectfully submit these comments in support of the U.S. Department of Commerce's (Commerce's) final results of redetermination in accordance with this Court's decision and remand order in *Catfish Farmers of America v. United States*, Court No. 21-00380, Slip Op. 23-97, 2023 WL 4560815 (Ct. Int'l Trade July 7, 2023)

(Remand Opinion).[1] *See* Final Results of Redetermination Pursuant to Court Remand, ECF No. 69-1, Nov. 6, 2023, Appx21965-22018 (Remand Results).[2]

## BACKGROUND

On July 8, 2021, Commerce published its final results pertaining to certain frozen fish fillets from Vietnam, where it selected India as the primary surrogate country to value Defendant-Intervenor Vinh Hoan's factors of production, except for a fish oil by-product, for which it used Indonesian data. *See Certain Frozen Fish Fillets from the Socialist Republic of Vietnam*, 86 Fed. Reg. 36,102 (Dep't of Commerce July 8, 2021) (P.R. 552), Appx1088-1091, and accompanying Issues and Decision Memorandum (P.R. 540), Appx1042-1087.[3] On July 7, 2023, the Court remanded this case for Commerce to reconsider its surrogate country selection. Specifically, the Court instructed Commerce to consider countries at a comparable level of economic development as potential surrogates on an equal basis with countries it deemed to be at

---

[1] The Remand Opinion also appears in this case docket at ECF No. 63.
[2] This document is also listed as Public Document No. 6 in the public record of the remand determination at ECF No. 70.
[3] Citations to the public record "P.R.__" refer to the underlying administrative review record listed at ECF No. 22.

the same level of economic development. The Court further instructed

Commerce to, in undergoing that analysis, consider Plaintiffs' data

regarding Indonesia or else explain why Indonesia was not at a

comparable level of economic development. *See* Remand Opinion.[4]

On November 6, 2023, Commerce issued its Final

Redetermination. In the Final Redetermination, Commerce again used

India as the primary surrogate country. Remand Results at 54,

Appx22018. In doing so, it provided a detailed analysis complying with

this Court's order, offered additional explanation as to why the record

evidence warranted its selection, and compared the relative merits of

the India data compared to the Indonesian data. *See generally* Remand

Results, Appx21965-22018.

## ARGUMENT

Commerce complied with the Court's remand order. *First*,

Commerce satisfied 19 U.S.C. § 1677b(c)(4) by utilizing a long-standing

(and repeatedly upheld) process in determining that India was a

---

[4] The Remand Order actually instructed Commerce to explain why *India* was
not at a comparable level of economic development. But as Commerce and the
Department of Justice have explained, Commerce concluded that *Indonesia*
was not at a comparable level of economic development. *See* Defendant's
Response in Support of the Remand Redetermination, ECF No. 78, Feb.16,
2024 at 4 n.2.

comparable economy for surrogate purposes and that Indonesia was not.
Despite the language used, Commerce's practice, as applied in this
proceeding, demonstrates that its surrogate country list was comprised
of countries economically *comparable* to Vietnam – and not economically
*identical* to Vietnam. *Second*, Commerce, despite finding that Indonesia
was not economically comparable to Vietnam in the relevant period,
went ahead and again evaluated the proposed Indian and Indonesia
surrogate values, and continues to find that the Indian data better
meets its surrogate value criteria – which further supports its decision
to select India as the primary surrogate country in this review. In all,
Commerce followed this Court's order, correctly chose India as the
primary surrogate country, and this Court should sustain the Final
Redetermination.

## I.    Commerce's Surrogate Country Selection Process Complies with the Remand Order and Section 1677b(c)(4) In Again Finding That Indonesia Is Not at a Comparable Level of Economic Development with Vietnam

Section 1677b(c)(4) requires Commerce to use, "to the extent
possible," a market economy country (*i.e.*, a surrogate country) that is
"at a level of economic development comparable to that of the
nonmarket economy country." Notably, the statute is silent as to *how*

Commerce is to determine which market economies are comparable. Against that backdrop, Commerce has long put in place a practice to choose surrogate countries. That is, Commerce first establishes a surrogate country list of countries "that are considered to be at the same level of economic development for surrogate country selection purposes" using World Bank *per capita* Gross National Income ("GNI") data. Then, "Commerce considers a range of factors including the surrogate value requirements for the existing products under examination, the expected data quality and availability of alternative surrogate countries, the economic diversity of the manufacturing sector in the alternative countries, and the degree of specificity in the import data potentially relied on to value the {factors of production}" in determining the primary surrogate country from the GNI data-based list. Remand Results at 15, Appx21979.

Commerce's two-step approach is reasonable. It relies on empirical third-party data to narrow the universe of similar economies and then considers an array of qualitative and quantitative of factors to determine which economy is the best surrogate. Given Commerce's broad discretion in this area, this considered approach satisfies Section

1677b(c)(4)'s requirements. *See Jiaxing Brothers Fastener Co., Ltd. v. United States*, 822 F.3d 1289, 1293 (Fed. Cir. 2016) (citing *QVD Food Co. v. United States*, 658 F.3d 1318, 1323 (Fed. Cir. 2011)).

This process is also well established. It allows interested parties to rely on a predictable process when determining which surrogate values to submit from a limited list of countries. Indeed, the Federal Circuit has held that where, as here, Commerce has an established practice, it generally *must* maintain that practice. *See Save Domestic Oil, Inc. v. United States*, 357 F.3d 1278, 1283-84 (Fed. Cir. 2004).

Moreover, as the Final Redetermination notes, this methodology has been repeatedly sustained by the Court of International Trade. *See* Remand Results, at 7-18, Appx21971-21982 (*citing Jacobi Carbons AB v. United States*, 313 F. Supp. 3d 1308, 1316, 1320 (Ct. Int'l Trade 2018); *Juancheng Kangtai Chem. Co. v. United States*, 2015 WL 4999476 (Ct. Int'l Trade 2015), at *7-8; and *Boading Yude Chem. Indus. Co., Ltd. v. United States*, 170 F. Supp. 2d 1335, 1343 (Ct. Int'l Trade 2001)).

To the extent that Commerce uses the term "same" rather than "comparable" in is surrogate country selection *description*, its *actual*

6

*process* demonstrates that it is in fact using a comparable standard. The agency itself clarifies/confirms that it uses the term "same" as "one of convenience" in that the selected "countries are most proximate in their level of economic development to the level of economic development of the NME country under consideration." Remand Results at 7, Appx21971. Indeed, the administrative record demonstrates that Commerce was not using the word "same" to mean "identical" in its selection process description. If that were the situation, then the six countries on Commerce's list would have to have a GNI the same as, identical to, that of Vietnam ($2,400). Remand Results at 4, Appx21968. However, the six countries on Commerce's list (which was compiled per Commerce practice as explained in the Remand) were in a range from that $2,400 GNI (per Commerce practice three GNI were higher and three were lower). Remand Results at 3-4, Appx21967-21968. Thus, regardless of the agency's use of the word "same," the record demonstrates that its practice is one of compiling and examining a list of potential surrogate countries that are merely economically similar to that of Vietnam (and not a stricter criterion of identical).

As the statute is silent on how to define the word "comparable,"
the agency's decision and practice to select three GNI above and three
GNI below the country at interest (Vietnam in this instance), is
reasonable and within the agency's discretion, especially since
Commerce fully explained how its list of comparable countries is derived
(in addition to the GNI criterion):

> In arriving at this list of countries, Commerce considers a
> range of factors, including the expected data quality for the
> potential surrogate countries in question, the availability of
> alternative surrogate countries, the economic diversity of the
> manufacturing sector in the alternative countries, and the
> degree of specificity in the import data potentially relied on
> to value the {Factors of Production}. When generating the
> Surrogate Country List, Commerce also takes certain factors
> into account which may influence the availability and
> quality of the price and cost data such as whether the
> country is experiencing civil unrest or extreme levels of
> inflation.

Remand Results at 15, Appx21979.

Accordingly, Commerce's well established, well-explained, and
repeatedly endorsed process (as adhered to in the subject administrative
review), is consistent with its statutory obligation to find a surrogate
country with a comparable level of development pursuant to 19 U.S.C. §
1677b(c)(4) and this Court's order.

**II.    While Not Required Under Law or Practice, Commerce Also Reasonably Concluded That Record Indian Data Better Meets Its Surrogate Value Criteria Than Does Record Indonesian Data**

Again, on Remand, Commerce continues to find that Indonesia is not at a comparable level of economic development as Vietnam. Remand Results at 16-17, Appx21980-21981. As such, per Commerce practice, there is no requirement to conduct a comparison of proposed record Indian and Indonesian data under the agency's surrogate value evaluation criteria: "..whether the {surrogate values} are publicly available, contemporaneous with the POR, representative of a broad market average, tax- and duty-exclusive, and specific to the inputs." Remand Results at 19, Appx21983 (citations omitted). Stated another way, Commerce is not required to afford record Indonesian surrogate value data the same consideration as record Indian surrogate value data since Indonesia was reasonably deemed not be economically comparable to Vietnam (and India was). Nonetheless, on Remand, Commerce again compared the Indonesian data on the record to the Indian data used for valuing factors of production, and continued to find that the Indian data was superior. As detailed below, Commerce's

9

conclusion after that comparison is supported by applicable law and Commerce practice.

During its comparison, Commerce listed several reasons explaining why Indian data were the best available information for valuing the subject merchandise, including that the Indian data were unambiguously related to the particular species processed in the production of the subject merchandise, i.e. pangasius hypothalamus (or patin siam in Indonesia), that the Indian data included three seafood processors, and that the Indonesian data relies upon "price lists" (typically not used by Commerce). Remand Results at 18-20, 46, Appx21982-21984, Appx22010.

Commerce engaged in an "even-handed" comparison of the Indian and Indonesian data and still concluded that Indian data was *overall* superior. Although Plaintiffs make much of the fact that an individual set of Indian data (labor surrogate values) was not contemporaneous (as Commerce acknowledged), this argument ignores the fact that federal law reflects a preference for valuing "all factors in a *single* surrogate country." 18 C.F.R. 351.408(c)(2) (emphasis added); Remand Results at 50-51, Appx22014-22015. And overall, the Indian data were preferable.

10

In any event, "[t]hat the evidence in the record could result in two inconsistent conclusions does not, alone, prevent Commerce's conclusion from being supported by substantial evidence." *United Steel & Fasteners, Inc. v. United States,* 947 F.3d 794, 798 (Fed. Cir. 2020). Especially considering "Commerce's special expertise in administering the anti-dumping law," the question is not whether the court would have reached the same decision on the same record—rather, it is whether the administrative record as a whole permits Commerce's conclusion. *See Nippon Steel Corp. v. United States*, 337 F.3d 1373, 1379 (Fed. Cir. 2003) ("Substantial evidence has been defined as more than a mere scintilla, as such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." (quotation marks omitted)). In all, after considering the totality of the evidence, Commerce concluded that Indian data remained the best available. This conclusion finds substantial evidence in the record.

## CONCLUSION

Commerce properly applied 19 U.S.C. § 1677b(c)(4)'s comparable standard in choosing India as the primary surrogate country and there is substantial evidence on the record to support this decision. For the

foregoing reasons, Defendant-Intervenors Vinh Hoan Corporation and
Nam Viet Corporation align their comments with those submitted by
Defendant, the United States. Therefore, the Court should sustain the
final results, as they are supported by substantial evidence and are
otherwise in accordance with law.

<div style="margin-left:40%">

Respectfully Submitted,

Matthew McConkey
MAYER BROWN LLP
1999 K Street, N.W.
Washington, D.C. 20006
(202) 263-3235
*Counsel to Vinh Hoan Corporation
and Nam Viet Corporation*

</div>

Dated: March 4, 2024

<u>Certificate of Compliance with Chambers Procedures 2(B)(1)</u>

The undersigned hereby certifies that the foregoing brief contains 2,098 words, exclusive of the corporate disclosure statement, table of contents, table of authorities, glossary of case-specific acronyms and abbreviations, and certificates of counsel, and therefore complies with the maximum 7,000 word count limitation as set forth in the Standard Chambers Procedures of the U.S. Court of International Trade.

By: <u>/s/Matthew J. McConkey</u>
Matthew J. McConkey